CABEZAS-MONTANO, ADALBERTO FRICKSON PALACIOS-SOLIS, HECTOR LEONARDO GUAGUA-ALARCON CABEZAS-MONTANO, ADALBERTO FRICKSON, HECTOR LEONARDO GUAGUA, ADALBERTO FRICKSON PALACIOS, here on behalf of Mr. Guagua Alarcon, together with my co-counsel Martin Fagernbaum and Bonnie Phillips-Williams. I will be speaking for two minutes on two points. The first of these points is that the government ignores Riverside v. McLaughlin, which I have to confess I found strange since it's the case I most rely on for the due process violation that occurred in this case. They claim that there's no Supreme Court case on point to establish plain error, but Riverside v. McLaughlin in fact unanimously held that 48 hours is the outer limit for an initial probable cause hearing. That case also holds that it's the government's burden, affirmative burden, to explain any undue delay. So when they say perhaps this happened, perhaps that happened, that is a failure to meet their burden. It's up to them, that's on page 57 of the opinion by the way, 500 U.S. 57. It's up to them to explain why my client was held in a brig for seven weeks instead of being promptly brought before a federal judicial officer. They don't deny that forum shopping is inimical to justice, politicizes the federal courts by having the executive branch take the position that some federal courts are better for them than other federal courts. That is an assault on the neutrality of the judiciary and this court should not countenance that. The remedy is very simple. This case should be tried under the law of the Ninth Circuit as it would have been if they had followed the Constitution. The second issue that I want to address is the Booker problem. The government does not ever say that they can win under United States v. Booker. Their argument in cases like this is always Tinoco controls and not violation of equal protection. Every American citizen is entitled to the benefit of the Constitution as interpreted by the United States Supreme Court and for a court to give its own precedent effect without considering whether it can be reconciled with Supreme Court precedent violates equal protection. I see my time is up. Thank you. Mr. Spiegelbaum. Thank you. May it please the court. Marty Feigenbaum on behalf of Appellant Palacio Solis. A member of this court on October 1 of this year wrote a majority opinion regarding the MDLA, another case like this, and she stated that was Judge Martin. She said, written into the statute are strict requirements for establishing jurisdiction over the vessels and people the government seeks to prosecute. When the government fails to follow these requirements, the MDLEA provides courts no jurisdiction over prosecutions under its terms. Because the government failed to meet all of the MDLEA's jurisdictional requirements, we vacate the defendant's convictions and sentences for lack of jurisdiction. That was just a few weeks ago and that's United States Figuero 2019 West Law 4805150 11th Circuit. You filed a 28-J letter about that and I have two questions. In that case, Judge Martin points out nobody asked, they only asked, are you the master of the vessel? That's all that was asked in that case, right? Yes. And she points out they didn't ask are you the individual in charge, but she also points out that nobody says does anyone claim a nationality? That's another thing she mentioned. Yes, Your Honor. The problem, and I want you to address this, in this case, I agree with you they didn't say is anybody in charge, but they did say is anybody a master? And twice they said does anyone claim a nationality? They asked it twice, they asked it of each person individually and there was no response. So why doesn't that make this case okay as opposed to falling under gear even by Judge Martin's own analysis? Yes, Judge. We are not going with is the general principle that Judge Martin talked about strict requirements must be followed of the MDLA for there to be jurisdiction and the requirement which was not followed in this case was the government not getting a State Department certification because the government in this case in trial number two, because we had trial number one it was a mistrial, trial number two the government in its response to the motion to dismiss for trial number two. I thought if if nobody claimed a nationality you don't go to the second level of the State Department. Well, that was clear on the statute or a case law, what have you, that if nobody claims a nationality then then that's the end of the story. I know they did go to the State Department, they did wait here, but they say they didn't have to, so help me with that. Yes, yes, Judge. First of all, the first document filed in the docket in this case from the government was the criminal complaint. The criminal complaint was a sworn statement from the government that there was a claim of Ecuadorian nationality. The government, once we filed the motion to dismiss for trial number two, the particular basis for jurisdiction, and so what happened then, I see my time is getting running out, so what happened then that the trial testimony of the Coast Guard officer during trial number two basically confirmed that the government was proceeding under the claim of nationality, and so if you look at, yes, because the questions were asked by the Perdomo, or whatever his name was. Yeah, it was actually Coast Guardsman Miller, and he actually stated, and I'll go right to his testimony real quick if I could just have a couple more seconds, you're gonna find his testimony was at, get right to it, and part of that testimony, Miller said, once I pass the information, then I wait on an SNO, statement of no objection, to complete the full law enforcement boarding, because we have to go through Ecuador, so I pass the information, and he goes on to say that they did wait 12 hours, something like 12 hours, to get Ecuador's response. They just stood still for 12 hours. They did. Yes, and the reason why they were required to do it is because of what's in that first document in this case, a sworn statement that there was a claim of nationality, and so in the government's response to the motion to dismiss, they also cited 70502 D1C, which is where there's a claim of nationality. Now, the last thing I would say is that the, when you look at the need for a certification, it says the foreign nation may respond by radio, cable, and so forth. That's may respond, but when that, that's a form of getting information, but it must be proved, it doesn't say must be, it says and proved conclusively by a state department certification, so the prong of 70502 D1, or D2, is for the proof. Are you saying then the government's the right to rely on the other basis of no claim of nationality was made, so we didn't have to do that? Is that what you're saying? It's, it's a combination, your honor, which is responding to the motion to dismiss by citing the, the one that talks about a claim of nationality that the foreign nation neither confirms nor denies, and the actual testimony of Officer Miller, who's the only witness. I thought they also argued we didn't have to do anything in the district court because there was never a claim of nationality. They never made that argument to the district court? They, they filed a docket entry 29, I believe it is, in the first, before the first trial. They said they were proceeding under that, it's 1B. No claim of nationality. They never had that matter heard, and then when we filed the motion to dismiss for trial number two, the response was they were proceeding under the one about a claim that's neither confirmed nor denied, and then when Miller testified in trial number two, he talked about going to Ecuador for the, for the statement of no objection, and so they, the, in other words, the government never. So did you argue that they waived this other basis they could recede in your brief to us? I mean, maybe you did, but I don't call it that they've waived this other independent basis that they could seek jurisdiction under. Did you argue they waived that basis? I did not argue waiver, but I did argue they were proceeding under the one that requires the statement of certificate, the State Department certification. Okay, thank you. I went over my time. Thank you so much for allowing me to do that. Thank you. Ms. Williams. Good morning, Your Honors. I'm going to discuss sentencing and the minor role. The court used the wrong legal standard when determining whether mis, whether the guideline of the minor role applied. The court erroneously relied upon United States de Verong, which is a 1999 en banc from this circuit, and it was well before the amendments that took place in the case as in United States v. Cruikshank and United States v. Press and Due, the court relied on only one factor in determining whether Mr. Cabezas-Montano and the other defendants are entitled to minor role. He determined, and I'm going to quote him, there are a lot of people involved in this industry, but certainly one of the critical roles that has been performed is the transportation under, and under de Verong, this defendant is to be held accountable for the conspiracy for which he has been charged, and his particular role in that conspiracy, not some larger conspiracy that involved the manufacturers or distributors, or distribute, I can't say it, somewhere else. In 2015, this guideline was amended, and amendment 794 is now set forth in common three of the minor role guideline says there's a bunch of factors the court should consider. The degree to which the defendant understood the scope and structure of the criminal activity, the degree to which the defendant participated in the planning or the organization of the activity, the degree to which the defendant exercised discretion, decision-making authority, and the nature and extent of the defendant's participation in the commission of the activity. Then it goes on to say, most importantly, for example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for adjustments under those guidelines. Then it goes on and says the fact that the defendant performs an essential role or an indispensable role in the criminal activity is not determinative. This was the only factor that Judge Moore looked at when determining that Mr. Cabezas-Montano and the other defendants, for that matter, did not qualify for a minor role. In this case, there was sufficient circumstantial evidence that Mr. Cabezas-Montano played a minor role. He lived in a shack in Colombia on the Pacific Coast with his wife and four children. They had no running water. He was a fisherman. His family for two generations had been fishermen or they sold conch. There's certainly no evidence in this record that Mr. Cabezas had an ownership interest in the drugs or was involved in anything other than transporting these drugs from one place to another or even had any control of the ultimate destination. Nor was there any evidence that he was to be paid a huge amount of money. Comment note three says a defendant who does not have a proprietary interest in the criminal activity and in who is being paid should be considered, and I repeat, should be considered for an adjustment. The court clearly erred in failing to take into account Mr. Cabezas' limited role, which gets me to a second issue. Under the 3553A factors when the court was making its ultimate sentence, the court at that point looked at the quantity of the drugs alone, which was a 14 kilos. But the court didn't look individually as required in A1 of 3553 at the nature and circumstances of the defendant. Again, my client had an extreme life of poverty. He had no prior convictions. The court never once discussed the history or the nature of any of the defendants in this case, and I think this case, the sentence should be vacated and the case remanded for thank you. Mr. Matzkin. Mr. Matzkin, I'll let you know when the when the light goes on, the green one. Okay, very much appreciated, Your Honor. When you have three minutes. Okay, thank you. Or whatever. Good morning. Good morning, Your Honors. May it please the court. Dan Matzkin on behalf of the United States with me at council table is Yvonne Rodriguez-Shack, one of the prosecutors who tried the case in district court. A combination of the record in this case, this court's binding precedents, and the applicable standards of review foreclose all of the many claims that have been raised here, and we ask that Your Honors affirm in all respects. Unless Your Honors prefer otherwise, I'll begin with squarely on point. There, as here, Coast Guard officers asked the crew members, all the crew members individually, whether any of them wish to make a claim of nationality, and nobody spoke up. And here, I would refer the court to docket entry 172, pages 88 to 91, and page 224, where two Coast Guard officers testified to the same course of events. In Medina, this court aptly found that under those circumstances, the district court properly exercised jurisdiction under 46 U.S.C. section 70502 D1B. Can I turn your attention to a different matter for a moment? Sure. I am really troubled by the seven-week delay, which doesn't appear to have any explanation whatsoever. And, I mean, by that reasoning, could they take a 10-year delay? I mean, how long of a delay would be allowed, and what is the rule that you are advocating for that should apply, especially in light of the Supreme Court opinion? Sure. And this case is a perfect example of why this court routinely declines to entertain issues raised for the first time on appeal that are highly fact-intensive. If there is one proposition of law that can be gleaned from the cases applying Rule 5A1B— refuse to entertain them—we entertain them under a plain error standard, right? So, I mean, it seems kind of problematic that it's seven weeks and no explanation. Sure. And so if there is one proposition of law that can be gleaned from the cases applying Federal Rule of Criminal Procedure 5A1B, whether it be this court's decision in Purvis, the Ninth Circuit's decision in Sakharov, or Judge Martin's concurrence in Castillo, that proposition is the length of the delay in and of itself is not dispositive. What matters is the purpose of the delay and what happened during the delay. We don't have any of that information. Correct. And the reason we don't have the answer to those questions is that the defendants never raised this issue below. And so, certainly on plain error review, the defendants bear the burden to establish error that is plain. And again, there is no categorical rule in any of the cases that a certain amount of time is violative of Rule 5A1B. And so the defendants cannot establish error that was plain. I'd like to— I'm sorry. Let's say 10 years had gone by. I mean, what is the rule that you would apply? You are relying solely on the plain error status of this. Is that correct? Well, we're relying on the fact that because this issue was never raised below, the defendants can't establish error. I mean, what we're relying on is this court's decision in purpose, which says— which takes for granted the fact that the reasons for the delay are what matters. And this court has said as much. And here, we just don't have those reasons. Had the issue been raised and fleshed out below, the government would have been able to put on evidence explaining the reasons for the delay. Why shouldn't we send it back and have the government do it now? I mean, this seems like a pretty important issue. But doing so would undermine the purposes of plain error review, and it would disincentivize any defendant from ever raising this issue in district court. And after all, why should they when they can have the best of both worlds? They can not raise it and go to— I'm sorry. Unless we established a rule from this, right? I mean, then, you know, if we went ahead and we established a rule that this is what's required, that the government has to, you know, demonstrate these things. I mean, it seems to me that it's inherent upon the government to explain if it's going to have a delay of seven weeks. I mean, that just seems kind of excessive. Well, I mean, again, I mean, you know, this is a motion that defendants do bring, and they routinely bring in cases of lengthy delays. And, you know, another issue in this case is that the defendants would not be able to establish prejudice. I mean, most often, as I'm sure your honors know, these cases arise in situations where, for instance, the government extracts a confession out of the defendants during the delay, or uses the— I'm sorry. That's okay. So their argument is, as I understand it, the prejudice is that had the government proceeded to bring these defendants directly to proceedings in the United States, it would have brought them to a place that was within the Ninth Circuit. Maybe that's not a recognized basis of prejudice. I mean, maybe that's what the answer is, that you wind up with one jurisdiction versus another. But counsel for the defendants is saying, well, that's kind of a bad rule for us to establish, because then it allows the government to forum shop, and that violates sort of the, you know, the judiciary's independence. Sure. And I'm glad you raised that, because I'd like to push back on the premise, the totally unsupported premise, that there was forum shopping. The defendants argue essentially that, you know, the government avoids the Ninth Circuit, like the plague in these cases, because the law is so bad compared to the Eleventh Circuit. But that's just not true. I mean, we don't routinely bring all of these cases in the Eleventh Circuit. I mean, in the last year and a half to two years alone, we've seen published opinions on MDLEA cases from the First Circuit, the Second Circuit, the D.C. Circuit. And maybe most critically of all, a cursory Westlaw search of district court opinions shows that multiple prosecutions under the MDLEA were brought in the last four to five years, roughly around the time that this case was prosecuted. So, you know, to the extent that the government is trying to avoid the Ninth Circuit tactically, it's done a remarkably bad job of it. What about Mr. Basquez's argument that the Supreme Court has previously established that a defendant must be brought within 48 hours, barring some good reason why not? Sure. So I'd respond to that in two ways. First of all, well, I guess my principal response is that City of Riverside does not establish 48 hours as a constitutional sine qua non or a constitutional end-all be-all. What it says, consistent with Purvis, is that the government should have the opportunity to explain what happened. And here, because the defendants failed to raise this issue, the government didn't have that opportunity. You know, my other answer, you know, parenthetically, is that, you know, City of Riverside is inapplicable here because that case arose under the Fourth Amendment, and the Fourth Amendment doesn't apply to arrests of aliens overseas. So maybe, but we have said that there must be reasonable suspicion to go on board a ship in international waters. Haven't we said that? Yes, Your Honors, you have. Doesn't that come from the Fourth Amendment? That does come from the Fourth Amendment. I don't know whether that argument was made in that case, but... Right. So it seems like we have applied the Fourth Amendment in international waters. Okay. I mean, you know, taking that for, you know, accepting that certainly for the sake of argument, again, we come back to my first point, which is that the two lines of precedent are not irreconcilable. In both of those cases, you know, neither case sets out a firm end-all be-all, 48 hours for nothing. In all of those cases, the because the issue wasn't raised in district court, wasn't fleshed out, government didn't have the opportunity to do that. Can I ask you a question about something else? Sure. So just, of course, I think Rivera binds us to conclude that pre-Miranda silence can be used as substantive evidence of guilt, but it seems like that holding is wrong. Obviously, we are a precedent rule, but I was just interested in your views on the correctness of Rivera. Sure. So, you know, we certainly stand by the holding in Rivera and, you know, to the extent that counsel, you know, today argues that the Supreme Court, that the prior panel precedent rule is somehow unconstitutional or somehow, you know, or for whatever reason should be abandoned by this Your Honor. I'm not suggesting that we wouldn't follow the prior precedent rule, but it seems to me that our holding in Rivera is based on sort of a flawed interpretation of Supreme Court precedent and in the case relied on, that involved use of silence, pre-Miranda silence for impeachment, not for substantive evidence of guilt, and it seems like that's a significant difference. I didn't know if you want to address that specific legal issue, it's up to you, but it's concerning me. And I, you know, Judge Jordan, I think, has previously written on this subject, and I think he raises some good points. I just was wondering what you . . . Sure. And here, I don't know that we use pre-Miranda silence as an admission of guilt, so I don't know that this issue even . . . Well, counsel, one of the problems with the inquiry on board after they're basically in custody, but before any Miranda warning, is the Q&A that has to do with the nationality of the vessel and other things like that ultimately wind up before the jury in the trial of the case on the merits, and that evidence is almost dispositive. Right. And they don't raise the issue in this case. Correct. That's exactly right. I've read very carefully that whole part of the transcript, and it never was raised, and it wasn't raised in the briefs. Right. Right. That's exactly right, and I don't think that it does come into play in this particular case. Can I turn your attention to the arguments of your colleague regarding the minor role adjustment? Sure. Did you want to address that? Her argument is basically that, look, the guidelines were amended after we issued DeVarone. Right. They now require consideration of several specific factors, and only one of those several factors was addressed. Do we need to send this back to the district court to address those other factors on this particular guideline, and if not, why not? Sure, Your Honors, and the short answer is you do not for several reasons. First of all, we would submit that this particular argument that we're hearing today and that we saw in the reply brief wasn't squarely raised in the initial brief. At least the way I read that brief and the way I responded to that brief or the argument that I responded to was that the district court erred in impermissibly concluding or focusing on the charge conspiracy as opposed to some wider, broader conspiracy involving other unnamed and uncharged individuals. That's the argument that I gleaned from the initial briefing that I responded to. In the reply brief, we're getting this argument as I see it for the first time, and therefore, in our view, it's been waived, but putting that aside, I would refer the court to the extensive ultimate colloquy denying minor role appears, I think, at the bottom of 21, top of 22, but for roughly 11 or 12 pages before that, there was an extensive colloquy back and forth between the district court and defense counsel where a number of factors were considered, including one of the other... Sorry to interrupt. Just to let you know, you've got two minutes. Oh, thank you very much. Including... The yellow light's on. Much appreciated. A number of factors were considered and were discussed during that colloquy, including the extent to which the defendant stood to gain, which is one of the factors listed in Amendment 794. The district court referred to the fact that the defendant would have made a lot of money or at least a lot relative to the impoverished place where he came from. In this scenario, we believe that the district court did sufficiently take the factors into account. It's worth noting, too, that Amendment 794 didn't overrule de Veroen. Amendment 794 is merely clarifying rather than substantive, which explains why it applies which was cited in Mr. Cabezas' brief. I'm happy to address any other questions if your honors have none. I think we have your case. Okay. Thank you. We respectfully ask that your honors affirm. Very briefly, your honors, the government didn't push back on the forum shopping in their brief. They're pushing back on it for the first time now. Can I ask some questions?  Mr. Matzkin is asserting that the reason we shouldn't consider the seven weeks a problem is because it was never raised before. Even under the city of Riverside, in those cases, of course, the court was considering arguments that the government had raised. That seems like it might be a fair consideration. Yes, except as your honor said, if you were to establish a rule, that would be different. And the Supreme Court, in fact, established a bright line rule that says 48 hours is the outer limit. The dissenters in that case wanted even less time. They wanted immediately upon being processed. And what the case says is- But doesn't it say it's the outer limit if there's not an explanation? No. It says absent extraordinary circumstances, not an explanation. But that's kind of the same. Yes, extraordinary circumstances, it would have to be an explanation that would satisfy extraordinary circumstances. But there's a whole list of things that do not. And tactical delays is number one on the list of things that never, ever are okay. But we don't know that there's a tactical delay. I mean, it seems like there could be because it's seven weeks. We do know. We do know. And I'll tell you why we know, your honor. Tell me why we know. We know because McLaughlin establishes the bright line rule. And it says, where an arrested individual does not receive a probable cause determination within 48 hours, the burden shifts to the government. Regardless of whether it's raised or not, they know when they have somebody in custody to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. That is the law. They're aware of it. They never discuss it in their brief. They try to ignore it. And they rely on purpose, which McLaughlin overrules. So they cannot win. This is the law. Two other quick things. There was no testimony about a covered vessel. So they can't win under Booker either, regardless of whether there was a certificate or not. Nothing in the record of the trial establishes that this was a covered vessel. And lastly, your honor, on the question you raised, it's not my issue, but Judge Jordan did write about pre-Miranda silence. There's a case by Justice Stevens called United States versus Hayes. I don't remember the site, but I'll provide it to the court, where the Supreme Court held that under supervisory powers, not the Constitution, so this doesn't apply to states, which is why the habeas case has come out differently, pre-Miranda silence is insolubly ambiguous and not admissible in federal court for any purpose. Thank you, your honors. Thank you again. Let me go right to the record citation that Mr. Matzkin talked about with the Officer Miller's testimony. He said that he was relying on D.E. or Docket Entry 172 at pages 88 to 91. If you go to the next page, page 92, Docket Entry 172, the testimony of Officer Miller, he says, so I'm quoting now from line 20. So if we don't get a claim of nationality or a master to take the claim from, we take the last port of call as the nationality of the vessel. And when you ask the last port of call, what happened? Answer, Alberto, that's my client, Palacio Solis, told me they left from Manta, Ecuador. So. Except that in that case, I mean, here the problem is that no, I mean, they were pointing at each other as who the master is, right? And part of B requires that it's the master who explains what the particular port of call is, or I guess what the flag country is, right? True. But the government acted in a way that the government accepted the nationality was Ecuadorian. And they also accepted it. But shouldn't we punish the government for maybe being on the safe side as and asking Ecuador as opposed to just, you know, because in this case, it wasn't, there was at that time, it was not clear who the master of the vessel was. I think if we look at the facts in the case, the facts are with you, the first entry in the case, which was the sworn statement of a DEA official saying that there was a claim of nationality made, you put it together with what the routine practice was to use the last port of call as the nationality. And then all of the bureaucratic things the government went through to try to confirm with Ecuador as the claim of nationality country, then they were in C, which in their response to the motion to dismiss, the government talked about C. At the hearing with Judge Snow on the motion to dismiss, the prosecutor talked about she had just come back from the 11th circuit for oral argument. And she was talking about the certification and how the defendants were trying to go behind the certification. So the government at the motion to dismiss hearing with Judge Snow was fully aware of the certification requirement. And in its response, it talked about that subdivision and was mentioning the certification there. So I think all of the evidence, and let me just say this, Judge Rosenbaum. In Obando, which is a case that the government relies on, the Obando case, there's a quote, it says, the court of appeals should not act as fact finder in the first instance. The government is asking this court to act as fact finder in the first instance. And try and find facts that support its position that it's proceeding under no claim of nationality was made. When the facts show that there was a claim of nationality. But didn't the district court in adopting the government's motion to find jurisdiction, make facts, make factual findings consistent with what the government's position is here on appeal? I believe your honor is referring to docket entry 29, which was the first trial, which was a mistrial. And I did not find in the record where Judge Moore ever adopted the or ruled on the government's motion regarding docket entry 29. So we had the trial. There was no ruling that I could find from the court. Ended in mistrial. And we went into the next phase, which was trial number two. And that's where I filed the motion to dismiss. The government never filed a response. Well, the government did file a response to the motion to dismiss. But they never argued to Judge Snow or even Judge Moore that they were proceeding under that subsection B where there was no claim of nationality after being asked. So I would ask the court to strictly follow, as Judge Martin opined in Garrow, that this is a sweeping statute. And for that reason, strict compliance must be must be followed. And there was no strict compliance with the certification here, which was required under everything I just mentioned. The reason, and I'll finish real quick, the reason why I filed the third supplemental notice of this court's decision in Ferrara 275 Fed 3rd 1020. And we have it. Is that? We have the case. Oh, OK. So you don't need anything on that. Listen, thank you again. I appreciate the extra time. OK. Sorry. Let me ask you straight up. Mr. Maskin says, well, you know, you all waived the issue about the amendment to the guidelines and those other considerations should have been made by the district court because you didn't really argue it until the reply brief. Did you have a response that you wanted to be heard on? Yes, Your Honor. My issue two, I specifically state that the fact that I go through the five factors set forth in amendment 794 and I focused upon the fact that the defendant performed an essential or indispensable role in a criminal activity is not determinative with emphasis added, which is what the court determined here. So it was brought up initially. I then, based upon their reply brief, focused on it more intensely in the reply brief. But Your Honor, I did bring it up initially and I do not believe I waived it. Thank you. We have your case. Thank you, sir. Thank you all. Move to the last case.